## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIR RAHMAN RAHMANI<br>Residential Address Filed Under Seal,<br><br>and<br><br>HAJI AJMAL RAHMANI<br>Villa 3, Street 14<br>Meadows 9<br>Dubai, United Arab Emirates,<br><br>and<br><br>OZEAN IMMOBILIEN<br>PROJEKTENTWICKLUNG VERWALTUNGS-<br>GMBH<br>Johannes-Kepler-Str 14 – 18, Herrenberg,<br>Baden-Wurttemberg 71083, Germany,<br><br>and<br><br>OZEAN IMMOBILIEN MANAGEMENT<br>GMBH & CO. KG<br>Johannes-Kepler-Str 14 – 18, Herrenberg,<br>Baden-Wurttemberg 71083, Germany,<br><br>and<br><br>OZEAN IMMOBILIEN<br>PROJEKTENTWICKLUNG GMBH & CO. KG<br>Johannes-Kepler-Str 14 – 18, Herrenberg,<br>Baden-Wurttemberg 71083, Germany,<br><br>and<br><br>PYRAMAXIA IMMOPROJEKT GMBH<br>& CO. KG<br>Johannes-Kepler-Str 14 – 18, Herrenberg,<br>Baden-Wurttemberg 71083, Germany,<br><br>and<br><br>PYRAMAXIA REAL ESTATE<br>DEVELOPMENT<br>GMBH & CO. KG | Civil Action No.: 1:24-cv-00285<br><br>**COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF** |

Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
PYRAMAXIA REAL ESTATE                             )
GMBH & CO. KG                                     )
Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
OZEAN GROUP GMBH                                  )
Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
OZEAN BAUSTOFFE GMBH & CO. KG                     )
Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
OZEAN HORIZONT BAUWERKE GMBH                      )
Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
OZEAN HORIZONT OBJEKTPLANUNG                      )
GMBH & CO. KG                                     )
Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
OZEAN HORIZONT                                    )
PROJEKTENTWICKLUNGS                               )
GMBH & CO. KG                                     )
Johannes-Kepler-Str 14 – 18, Herrenberg,          )
Baden-Wurttemberg 71083, Germany,                 )
                                                  )
                and                               )
                                                  )
RG IMMOPROJEKT GMBH & CO. KG                      )

2

Johannes-Kepler-Str 14 – 18, Herrenberg,       )
Baden-Wurttemberg 71083, Germany,              )
                                               )
                   and                         )
                                               )
RG REAL ESTATE DEVELOPMENT                     )
GMBH & CO. KG                                  )
Johannes-Kepler-Str 14 – 18, Herrenberg,       )
Baden-Wurttemberg 71083, Germany,              )
                                               )
                   and                         )
                                               )
RG REAL ESTATE GMBH & CO. KG                   )
Johannes-Kepler-Str 14 – 18, Herrenberg,       )
Baden-Wurttemberg 71083, Germany,              )
                                               )
                   and                         )
                                               )
NAI EUROPE ENERGY GMBH & CO. KG                )
Johannes-Kepler-Str 14 – 18, Herrenberg,       )
Baden-Wurttemberg 71083, Germany,              )
                                               )
                   and                         )
                                               )
NAI MANAGEMENT GMBH                            )
Johannes-Kepler-Str 14 – 18, Herrenberg,       )
Baden-Wurttemberg 71083, Germany,              )
                                               )
                   and                         )
                                               )
PYRAMAXIA LIMITED                              )
6 Aftokratora Loustinianou Street,             )
58 Rita Court, Flat 203                        )
Makedonitissa, Engomi                          )
Nicosia 2413, Cyprus,                          )
                                               )
                   and                         )
                                               )
RG HOLDINGS LIMITED                            )
6 Aftokratora Loustinianou Street,             )
58 Rita Court, Flat 203                        )
Makedonitissa, Engomi                          )
Nicosia 2413, Cyprus,                          )
                                               )
                   and                         )
                                               )

BUOYANT HOLDINGS LIMITED )
6 Aftokratora Loustinianou Street )
58 Rita Court, Flat 203 )
Makedonitissa, Engomi )
Nicosia 2413, Cyprus, )
)
       and )
)
OCEAN EUROPE CY LIMITED )
Floor No: 2, Stasinou 23 )
Nicosia 2404, Cyprus, )
)
       and )
)
D.C.H. DREAM CREATORS HOLDINGS )
LIMITED )
Floor No: 2, Stasinou 23 )
Nicosia 2404, Cyprus, )
)
       and )
)
RISEONIC HOLDINGS LIMITED )
Floor No: 2, Stasinou 23 )
Nicosia 2404, Cyprus, )
)
       and )
)
ZEM HOLDINGS LTD, )
Floor No: 2, Stasinou 23 )
Nicosia 2404, Cyprus, )
)
       and )
)
RG GROUP FZE )
Saif Suite Z2-18 )
P.O. Box 514280 )
Sharjah, United Arab Emirates, )
)
       and )
)
THE FERN LIMITED )
PO Box 22693 )
Jebel Ali Free Zone Authority )
United Arab Emirates, )
)
       and

OCEAN ESTATE COMPANY LIMITED )
Office 902, Saba 1 Jumeirah Lakes Towers )
P.O. Box 346049 )
Dubai, United Arab Emirates, )
)
       and )
)
OCEAN ESTATE GMBH )
Tuchlauben 7 A )
Wien 1010, Austria, )
)
       and )
)
OCEAN PROPERTIES GMBH )
Tuchlauben 7 A )
Wien 1010, Austria, )
)
       and )
)
OZEAN REAL ESTATE GMBH & CO. KG )
Johannes-Kepler-Str 14 – 18, Herrenberg, )
Baden-Wurttemberg 71083, Germany, )
)
       Plaintiffs, )
)
v. )
)
JANET YELLEN )
in her official capacity as the )
Secretary of the U.S. Department of the Treasury )
1500 Pennsylvania Ave., NW )
Washington, D.C. 20220, )
)
       and )
)
THE UNITED STATES DEPARTMENT OF )
THE TREASURY )
1500 Pennsylvania Ave., NW )
Washington, D.C. 20220, )
)
       and )
)
BRADLEY SMITH )
in his official capacity as the Director of the )
United States Department of the Treasury )

Office of Foreign Assets Control      )
1500 Pennsylvania Avenue, NW    )
Washington, D.C. 20220,         )
                                   )
         and                   )
                                   )
THE UNITED STATES DEPARTMENT  )
OF THE TREASURY OFFICE OF FOREIGN )
ASSETS CONTROL                )
1500 Pennsylvania Avenue, NW    )
Freedman's Bank Building         )
Washington, D.C. 20220,         )
                                   )
         and                   )
                                   )
ANTHONY J. BLINKEN           )
in his official capacity as the      )
Secretary of the United States      )
Department of State             )
2201 C Street, NW             )
Washington, D.C. 20520,         )
                                   )
         and                   )
                                   )
THE UNITED STATES DEPARTMENT OF  )
STATE                         )
2201 C Street, NW             )
Washington, D.C. 20520,         )
                                   )
        Defendants.             )

## **COMPLAINT**

Plaintiffs, Mir Rahman Rahmani ("**M. Rahmani**"), Haji Ajmal Rahmani ("**A. Rahmani**" and together with M. Rahmani, the "**Rahmanis**"), Ozean Immobilien Projektentwicklung Verwaltungs-GmbH, Ozean Immobilien Management GmbH & Co. KG, Ozean Immobilien Projektentwicklung GmbH & Co. KG, Pyramaxia Immoprojekt GmbH & Co. KG, Pyramaxia Real Estate Development GmbH & Co. KG, Pyramaxia Real Estate GmbH & Co. KG, Ozean Group GmbH, Ozean Baustoffe GmbH & Co. KG, Ozean Horizont Bauwerke GmbH, Ozean Horizont Objektplanung GmbH & Co. KG, Ozean Horizont Projektentwicklungs GmbH & Co. KG, RG

6

Immoprojekt GmbH & Co. KG, RG Real Estate Development GmbH & Co. KG, RG Real Estate GmbH & Co. KG, NAI Energy Europe GmbH & Co. KG, NAI Management GmbH, Pyramaxia Limited, RG Holdings Limited, Buoyant Holdings Limited, Ocean Europe CY Limited, D.C.H. Dream Creators Holdings LTD, Riseonic Holdings Limited, ZEM Holdings LTD, RG Group FZE, The Fern Limited, Ocean Estate Company Limited, Ocean Estate GmbH, Ocean Properties GmbH, and Ozean Real Estate GmbH & Co. KG (all entities collectively, "**Related Entities**" and, together with M. Rahmani and A. Rahmani, collectively "**Plaintiffs**"), by counsel, bring this Complaint against Defendants, the Secretary of the Treasury Janet Yellen of the U.S. Department of Treasury, the United States Department of the Treasury ("**Treasury**"), the United States Department of the Treasury's Office of Foreign Assets Control ("**OFAC**") and its Director, Bradley Smith (collectively, the "**Treasury Defendants**"), the Secretary of State Anthony J. Blinken, the United States Department of State (the "**State Department**" and together with Mr. Blinken, the "**State Defendants**") (collectively "**Defendants**"), and in support of their Complaint allege:

## NATURE OF THE CASE

1.       This action challenges the unlawful *ultra vires* designations of Plaintiffs to OFAC's Specially Designated Nationals and Blocked Persons List ("**SDN List**"), purportedly under the authority of the Global Magnitsky Human Rights Accountability Act (Pub. L. 114-328), 22 U.S.C. §10101, *et seq.* (the "**Global Magnitsky Act**") by the Treasury Defendants, and under Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act of 2021, Pub. L. 116-94 ("**FORPA**") by the State Defendants.

2.       On December 11, 2023, without any prior notice to Plaintiffs that OFAC was considering such designations and without affording Plaintiffs any opportunity to be heard, OFAC announced through a press release that it had designated Plaintiffs for, and imposed upon them and 44 purported associated entities, economic blocking sanctions pursuant to Executive Order

("E.O.") 13818 issued by then-President Trump on December 20, 2017, and which OFAC's press release conveys "builds upon and implements" the Global Magnitsky Act.

3.      OFAC's press release can be found at https://home.treasury.gov/news/press-releases/jy1973 and the State Department's press release can be found at https://www.state.gov/leveraging-tools-to-promote-accountability-and-counter-global-corruption/. The Special Inspector General for Afghanistan Reconstruction ("**SIGAR**") also put out a press release in connection with the designations of Plaintiffs which can be found at https://www.sigar.mil/pdf/PressRelease/SIGAR%20GloMag%20Press%20Release.pdf (collectively attached as **Exhibit 1**). These press releases make unsubstantiated, broad allegations against Plaintiffs, which are false and inadequate as a matter of law to sustain the designations of Plaintiffs.

4.      The *ultra vires* designations of Plaintiffs to the SDN List by the Treasury Defendants have the effect of (i) unilaterally blocking, or freezing, any property or interests in property of Plaintiffs that are in the United States or in the possession or control of U.S. persons, and (ii) unilaterally prohibiting U.S. persons from engaging in transactions with any of them.

5.      Plaintiffs were never provided any advance notice that they were being considered for such designations, and first learned of the designations through the media following conclusory press releases issued by OFAC, the State Department, and SIGAR that provide no factual basis or credible evidence in support of their conclusory assertions, which assertions are inaccurate and without proper foundation.

6.      Accordingly, the Rahmanis, through counsel, demanded the administrative record purporting to substantiate Plaintiffs' designations from Defendant OFAC on December 21, 2023. OFAC acknowledged receipt of the request but has not substantively responded. On January 31,

2024, Plaintiffs, by counsel, submitted petitions for removal from the SDN List through the OFAC administrative reconsideration process pursuant to 31 C.F.R. § 501.807.

7.      The OFAC administrative reconsideration process, however, cannot address the *ultra vires* actions of the Treasury Defendants purportedly under the authority of E.O. 13818 and which OFAC's press release conveys "builds upon and implements" the Global Magnitsky Act.

8.      E.O. 13818's attempt to extend the Global Magnitsky Act sanctions authority to former foreign officials exceeds the authority granted to Defendants in the Global Magnitsky Act and is therefore not in accordance with law and in violation of the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

9.      This action also challenges the State Department's concurrent unlawful *ultra vires* designation of Plaintiffs and five of their immediate family members as being ineligible for entry into the United States under FORPA because, similar to the Global Magnitsky Act, FORPA does not authorize sanctions against former foreign government officials.

10.     These unlawful *ultra vires* designations have caused, and unless set aside and/or enjoined will continue to cause, irreparable harm and damage to Plaintiffs' reputations, ability to engage in business with U.S. persons and entities as well as engage generally in business throughout the world, and their rights to access and enjoy their property, while also placing the Rahmanis and their immediate family members in, and exposing them to, serious risk of loss of citizenships, potential deportation to Afghanistan where they and their families, if returned, would encounter serious threat and risk of persecution and physical harm at the hands of the Taliban.

11.     Moreover, the Defendants' actions constitute an overreach of authority in an effort to apply a sanctions regime to what can be fairly and largely characterized as an extraterritorial contracts dispute for the delivery of fuel to the Afghan National Defense and Security Forces

("**ANDSF**") and the U.S. Military by Afghan companies in Afghanistan many years ago under alleged contracts with an Afghan government that no longer exists. To the extent such contracts involved the United States, such efforts circumvent well establish remedies available to Defendants or the U.S. government writ large under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.* and the False Claims Act, 31 U.S.C. §§ 3729–3733.

12.     To exacerbate matters, more than two years after the Taliban retook Afghanistan following the withdrawal of U.S. troops, Defendants, now elect to sanction—without credible evidence—two *former* Afghan officials who actively stood up to the Taliban and who worked with the United States to promote Afghan reconstruction. M. Rahmani served alongside U.S. troops for many years at Bagram Airfield as a Brigadier General in the Afghan Army and Commander of the Afghan Army's 40th Division.  A. Rahmani worked directly as a translator for the U.S. Army's commanding officer at Bagram Airfield and then provided supplies and services to U.S. troops throughout Afghanistan supporting the U.S. war against the Taliban and other terrorist groups in the country. How this action serves the national security and foreign policy interests of the United States is beyond the understanding of Plaintiffs.

**JURISDICTION AND VENUE**

13.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under the laws of the United States; 28 U.S.C. § 1361 as this action is in the nature of mandamus relief; and 5 U.S.C. §§ 701-706.

14.     Declaratory and injunctive relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202, respectively, Federal Rules of Civil Procedure 57 and 65, respectively, and the inherent equitable powers of this Court.

15.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e)(1).

## PARTIES

16.     Plaintiff Mir Rahman Rahmani is a citizen of Afghanistan by birth, and is also a citizen of Cyprus, and St Kitts and Nevis. He currently resides in Istanbul, Turkey. He was a member of the lower house of Afghan Parliament, or the Wolesi Jirga ("**Wolesi Jirga**"), from January 26, 2011 until August 15, 2021, when the Taliban took control of Kabul, Afghanistan. On December 11, 2023, M. Rahmani was sanctioned by both OFAC and the State Department and was added to the SDN List maintained and administered by OFAC. The State Department's sanctions rendered M. Rahmani and his immediate family members ineligible for entry into the United States.

17.     Plaintiff Haji Ajmal Rahmani is a citizen of Afghanistan by birth, and is also a citizen of Cyprus, and St. Kitts and Nevis. He currently resides in Dubai, United Arab Emirates. He was a member of the Wolesi Jirga from May 15, 2019 until August 15, 2021, when the Taliban took control of Kabul, Afghanistan.  On December 11, 2023, A. Rahmani was sanctioned by both OFAC and the State Department and was added to the SDN List maintained and administered by OFAC. The State Department's sanctions rendered A. Rahmani and his immediate family members ineligible for entry into the United States.

18.     Plaintiffs Ozean Group GmbH, Ozean Horizont Projektentwicklungs GmbH & Co. KG, Ozean Baustoffe GmbH & Co. KG, Ozean Horizont Objektplanung GmbH & Co. KG, Ozean Immobilien Projektentwicklung Verwaltungs – GmbH, Ozean Immobilien Management GmbH & Co. KG, Ozean Immobilien Projektentwicklung GmbH & Co. KG, Ozean Horizont Bauwerke GmbH, RG Real Estate GmbH & Co. KG, RG Immoprojekt GmbH & Co. KG, RG Real Estate Development GmbH & Co. KG, Pyramaxia Real Estate GmbH & Co. KG, Ozean Real Estate GmbH & Co. KG, Pyramaxia Immoprojekt GmbH & Co. KG, Pyramaxia Real Estate

Development GmbH & Co. KG, NAI Management GmbH, NAI Europe Energy GmbH & Co. KG are German entities that are owned and/or controlled by A. Rahmani (collectively "**A. Rahmani German Entities**") and have been designated solely on that basis. On December 11, 2023, The A. Rahmani German Entities were sanctioned by the Treasury Defendants and added to the SDN List maintained and administered by OFAC. The A. Rahmani German Entities are co-located at Johannes-Kepler-Straße 14-18, 71083 Herrenberg, Germany.

19.     Plaintiffs Pyramaxia Limited, RG Holdings Limited, and Buoyant Holdings Limited (co-located at 6 Aftokratora Loustinianou Street, 58 Rita Court, Flat 203, Makedonitissa, Engomi, Nicosia 2413, Cyprus) along with Ocean Europe CY Limited, D.C.H. Dream Creators Holdings Limited, and Riseonic Holdings Limited (co-located at Floor No: 2, Stasinou 23, Nicosia 2404, Cyprus) are Cypriot entities that are owned and/or controlled by A. Rahmani (collectively "**A. Rahmani Cypriot Entities**") and have been designated solely on that basis. On December 11, 2023, The A. Rahmani Cypriot Entities were sanctioned by the Treasury Defendants and added to the SDN List maintained and administered by OFAC.

20.     Plaintiffs RG Group FZE (located at Saif Suite Z2-18, P.O. Box 514280, Sharjah, United Arab Emirates) The Fern Limited (located at P.O. Box 22693, Jebel Ali Free Zone Authority, United Arab Emirates), and Ocean Estate Company Limited (located at Office 902, Saba 1 Jumeirah Lakes Towers, P.O. Box 346049, Dubai, United Arab Emirates) are United Arab Emirates entities that are owned and/or controlled by A. Rahmani (collectively "**A. Rahmani UAE Entities**") and have been designated solely on that basis. On December 11, 2023, The A. Rahmani UAE Entities were sanctioned by the Treasury Defendants and added to the SDN List maintained and administered by OFAC.

21.     Plaintiffs Ocean Estate GmbH and Ocean Properties GmbH are Austrian entities that are owned and/or controlled by A. Rahmani (collectively "**A. Rahmani Austrian Entities**") and have been designated solely on that basis. On December 11, 2023, The A. Rahmani Austrian Entities were sanctioned by the Treasury Defendants and added to the SDN List maintained and administered by OFAC. The A. Rahmani Austrian Entities are co-located at Tuchlauben 7 A, Vienna 1010, Austria

22.     Plaintiff ZEM Holdings LTD is a Cypriot entity owned and controlled by M. Rahmani. On December 11, 2023, ZEM Holdings was sanctioned by the Treasury Defendants and added to the SDN List maintained and administered by OFAC. ZEM Holdings LTD is located at Floor No: 2, Stasinou 23, Nicosia 2404, Cyprus.

23.     Defendant Janet Yellen is the Secretary of the Treasury of the United States. Ms. Yellen is sued in her official capacity.

24.     Defendant the U.S. Department of the Treasury is a cabinet-level governmental department, led by the Secretary of the Treasury. In addition to its core objective of promoting economic prosperity and ensuring the financial security of the United States, it implements and administers economic sanctions against foreign threats to the United States. It is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

25.     Defendant Bradley Smith is the Director of OFAC. Mr. Smith is sued in his official capacity.

26.     Defendant OFAC is a federal administrative agency of the U.S. Department of the Treasury and is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220. OFAC is responsible for administering U.S. economic sanctions programs, including issuing regulations pursuant to the laws and executive orders authorizing economic sanctions

actions. OFAC is also the agency responsible for designating persons as SDNs and enforcing U.S. sanctions. OFAC's sanctions responsibilities include designations and implementation under E.O. 13818.

27.     Defendant Anthony J. Blinken is the Secretary of State of the United States. Mr. Blinken is sued in his official capacity.

28.     Defendant the U.S. Department of State is a cabinet-level governmental department, led by the Secretary of State, that manages the United States' relationships with foreign governments, international organizations, and the people of other countries.  It is located at 2201 C St., NW, Washington, D.C. 20520.

## STATEMENT OF FACTS AND ALLEGATIONS

### OFAC's Unlawful Sanctions Designation in Violation of the Global Magnitsky Act

29.     On December 11, 2023, without any prior notice to Plaintiffs that OFAC was considering such designations and without affording Plaintiffs any opportunity to be heard, OFAC announced through a press release that it had designated Plaintiffs for, and imposed upon them and 44 purported associated entities[1], economic blocking sanctions pursuant to E.O. 13818 which OFAC's press release conveys "builds upon and implements" the Global Magnitsky Act.

30.     The Global Magnitsky Act, in relevant part however, only authorizes sanctions against a foreign person "based on credible evidence" that the person "*is a government official or a senior associate of such an official, that is responsible for, or complicit in, ordering, controlling,

---

[1] The list of entities sanctioned by OFAC based on their purported ownership or control by the Rahmanis included a number of entities not owned or controlled by either M. Rahmani or A. Rahmani. Furthermore, the list of sanctioned entities included a number of entities previously owned by A. Rahmani but that have either been closed or transferred to third parties and therefore no longer exist or are no longer owned or controlled by A. Rahmani. Given the lack of ownership or control over these entities by the Rahmanis, these entities are not parties to this action.

or otherwise directing, acts of significant corruption, including the expropriation of private or public assets for personal gain, corruption related to government contracts or the extraction of natural resources, bribery, or the facilitation or transfer of the proceeds of corruption to foreign jurisdictions." Pub. L. 114-328, Subtitle F. § 1263(a)(3), now codified at 22 U.S.C. §10102(a)(3) (emphasis added).

31.    No Plaintiff in this matter is a government official.

32.    Neither Plaintiff M. Rahmani nor Plaintiff A. Rahmani was a government official at the time of Defendants' actions designating Plaintiffs under the Global Magnitsky Act, E.O 13818 and FORPA.

33.    As admitted in OFAC's December 11, 2023 press release, at the time of their designation, the Rahmanis were "two **_former_** Afghan government officials." *See* Ex. 1, ¶ 1 (emphasis added).

34.    Plaintiff M. Rahmani previously served as a member of Afghanistan's Wolesi Jirga, from January 26, 2011 until August 15, 2021.

35.    Plaintiff A. Rahmani previously served as a member of Afghanistan's Wolesi Jirga from May 15, 2019 until August 15, 2021.

36.    Therefore, at all times prior to May 15, 2019, Plaintiff A. Rahmani was a private citizen. And, at all times subsequent to August 15, 2021, Plaintiff A. Rahmani has also been a private citizen.

37.    Furthermore, with respect to Plaintiff A. Rahmani, the conclusory assertions contained in the government press releases only allege actions that took place prior to his assumption of official office as a member of the Wolesi Jirga and are alleged to have occurred entirely while he was a private citizen.

38.     To the extent E.O. 13818 seeks to expand the scope of persons that the Global Magnitsky Act authorizes the President to impose sanctions against beyond a "foreign person" who "is a government official," as is set forth expressly in the Global Magnitsky Act, to also include *former* government officials, such provision exceeds the authority of the Global Magnitsky Act and is *ultra vires*.

39.     A bill to amend the Global Magnitsky Act "to [*inter alia*] modify the foreign persons subject to sanctions" was introduced in the United States Senate on January 28, 2021, as S.93.  *See*  https://www.congress.gov/bill/117th-congress/senate-bill/93/text.  S.93  expressly recognizes that the Global Magnitsky Act, in pertinent part, only authorizes imposition of sanctions against a foreign person who is a current government official as the proposed amendment was to amend and change the sanctions authorization from a foreign person who "is a government official" to a foreign person who "is a current or former government official" by amending subsection (a) of section 1263 of the Global Magnitsky Act to read as follows:

> (a) *IN GENERAL.—The President may impose the sanctions described in subsection (b) with respect to—*
>
> *(1) any foreign person that the President determines, based on credible information—*
>
> *(A) is responsible for or complicit in, or has directly or indirectly engaged in, serious human rights abuse;*
>
> *(B) is a current or former government official, or a person acting for or on behalf of such an official, who is responsible for or complicit in, or has directly or indirectly engaged in— . . ..*

S. 93 did not pass the Seante and was not adopted into law. The Global Magnitsky Act's pertinent provision for imposition of sanctions remains limited to a foreign person who "is a government official or senior associate of such an official."  *See* 22 U.S.C. § 10102(a)(3).

40.     As a result of the blocking sanctions, Plaintiffs have been cut off from the U.S. financial system. Further, U.S. persons are generally prohibited from engaging in any transactions or dealings with any persons on the SDN List. Executive Order 13818 §§ 1, 4. E.O. 13818 also stipulates that non-U.S. persons who "have materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of" Plaintiffs risk being added to the SDN List. *Id.* §1(a)(iii)(A).

41.     The blocking sanctions action also reaches foreign financial institutions, including those that rely on the U.S. financial system, and threatens those institutions with a loss of access should they violate U.S. sanctions.

**The State Department's Unlawful Designation in Violation of the FORPA**

42.     By a press release also issued on December 11, 2023, and also without any prior notice to Plaintiffs that it was considering such designations, the State Department announced the imposition of entry sanctions against Plaintiffs (and five immediate family members) pursuant to Section 7031(c) of FORPA, publicly designating both Plaintiffs and the immediate family members as ineligible for entry into the United States.

43.     Section 7031(c) of FORPA, however, allows the Secretary of State to impose sanctions only upon "[o]fficials of foreign governments and their immediate family members" and only "about whom the Secretary of State has credible information have been involved" in "significant corruption."

44.     At the time of the FORPA designation, however, neither Plaintiff M. Rahmani nor Plaintiff A. Rahmani[2] was an "official[] of [a] foreign government[]" and nor are they currently

---

[2] The designation of the Rahmanis' immediate family members is completely derivative and therefore must also fall.

an "official[] of [a] foreign government[]." *Id.* Additionally, the State Department's press release is devoid of any "credible information" that the Rahmanis were involved in "significant corruption" and instead simply makes conclusory assertions.

**Defendants' Unlawful *Ultra Vires* Actions Have
and Will Continue to Cause Substantial Harm**

45.    Defendants' actions and the blocking sanctions by OFAC have caused Plaintiffs substantial harm and already brought about immediate and severe consequences, inflicting grave and irreparable harm upon Plaintiffs and their reputations, disrupting business relationships enjoyed by Plaintiff A. Rahmani and companies under his ownership, and also negatively impacting the employees of those companies jeopardizing their livelihoods and their families who depend on these companies for their financial well-being.

46.    This resulting harm includes destruction of various relationships such as:

a.    the cancellation by IBM Deutschland GmbH ("IBM") of a lease agreement for IBM's German headquarters on December 31, 2023 that otherwise would have been effective until December 31, 2024 at an annual rent amounting to ca. EUR 4.2 mil, with Plaintiff RG Real Estate GmbH & Co. KG ("RG"), a German company owned by A. Rahmani;

b.    the public announcement by the City of Ehningen, Germany of its suspension of an urban development plan for Plaintiff RG to redevelop the property leased by IBM after the end of the IBM lease into a mixed-use residential, commercial, educational and technology project;

c.    the cancellation by one of the world's leading applied research organizations of a lease agreement with Plaintiff Ozean Horizont

Projektentwicklungs GmbH & Co. KG, which lease agreement was an essential part of the Ehningen urban development plan; and

d.      the termination of a supply contract by the most important supplier of materials for Plaintiff Ozean Baustoffe GmbH & Co. KG.

47.     Since December 11, 2023, Plaintiffs have not had access to the U.S. financial system. The blocking sanctions prohibit banks around the world with correspondent status in the United States (which is the vast majority of banks in the world) from dealing with Plaintiffs, as well as any other entity with business activities in the United States. All of these consequences flow from the improper designation of Plaintiffs as SDNs.

48.     Plaintiffs are subject to these blocking and entry sanctions indefinitely, to the substantial harm of Plaintiffs. Defendants imposed these blocking and entry sanctions despite the uncontroverted (indeed, admitted) fact that Plaintiffs are not government officials and despite failing to provide credible evidence or factual support for their actions.

49.     Moreover, Defendants' actions will have no impact on U.S. national security or foreign policy objectives because Plaintiffs have no present ties to any government, including the Afghan government controlled by the Taliban, much less any ability to influence its policies or actions with respect to any matter. In short, Defendants' actions serve no legitimate U.S. national security or foreign policy purpose, and instead are punishing Plaintiffs and causing them and the public substantial harm in clear contravention of law.

**Defendants' Conclusory Allegations Are Unsupported and Contra-Factual**

50.     Defendants' designations of Plaintiffs is not supported by credible evidence or credible information.

51.     For example, OFAC's press release announcing the subject sanctions states that "the underlying corrupt activity perpetrated by the Rahmanis' occurred in Afghanistan."

52.     However, the only Afghan companies among the 44 designated entities are Fidelis Logistics and Supply Services ("**FLS**") and Secure Movement Logistics ("**SML**"), the latter of which is described in the press release, without identification of any supporting evidence, as being "[o]ne of the Rahmanis' fuel companies."

53.     OFAC's conclusory assertion that SML is "[o]ne of the Rahmani's fuel companies" is false.  Also false is the press release's conclusory statement that FLS and SML are "owned or controlled by, or . . . acted or purported to act for or on behalf of, directly or indirectly, A. Rahmani . . . ."

54.     Neither of the Rahmanis nor any of Related Entities have, or have had, any ownership interest, direct or indirect, in or control over either FLS or SML.

55.     Neither FLS nor SML have acted for or on behalf of A. Rahmani.

56.     Plaintiffs are unaware of any instance where FLS or SML purported to act for or on behalf of any of the Plaintiffs herein, whether directly or indirectly.

57.     Upon information and belief, SML is 100% owned by Ahmad Farhad Muzhda.

58.     Upon information and belief, FLS is 100% owned by Fazel Haq Fazli.

59.     Plaintiffs categorically deny any involvement in any fuel procurement corruption scheme as alleged in the OFAC Press Release to have taken place in 2014.  On the contrary, Plaintiffs had no direct or indirect involvement or participation in the alleged ANDSF fuel tender in 2014.

60.     Plaintiff A. Rahmani previously owned a company called Northern Afghanistan Logistics Services ("**NALS**") that contracted with the U.S. Military in Afghanistan and Afghan government entities to provide fuel for the ANDSF.

61.     NALS performed these various contracts in Afghanistan from approximately 2013 until approximately February 2017.  NALS did not, however, participate in the alleged 2014 ANDSF fuel tender.

62.     NALS was never accused of any malfeasance, fraud, corruption, or other wrongdoing in contracts performed by NALS.

63.     Neither Plaintiffs nor NALS ever participated in contract inflation, bid rigging, import tax fraud, or fuel theft as alleged in the OFAC Press Release.

64.     Upon information and belief, customs tariff exemptions on fuel imported into Afghanistan for U.S. Military and ANDSF between 2013 and 2017 was a highly regulated process overseen by multiple Afghan Government agencies and the U.S. Military.  More importantly, the process of customs tariff exemptions was initiated and controlled by U.S. Military as per the Security and Defense Cooperation Agreement between Afghanistan and the U.S.

65.     Based on NALS records, NALS delivered a total of 314,210,879 liters of fuel to ANDSF between March of 2015 and February of 2017, all of which was eligible for exemption from taxes and customs tariffs, however NALS only obtained exemption for 246,911,310 liters of fuel. That is, NALS delivered more than 67 million liters of fuel for which NALS did not receive any customs tariffs exemption.

66.     Plaintiffs categorically deny any involvement in any fuel procurement corruption or fuel theft scheme as alleged in the OFAC Press Release.

67.     Plaintiff M. Rahmani categorically denies the allegation in OFAC Press Release that he paid "multiple Members of Parliament throughout the parliamentary speakership elections in 2018 to secure their votes for his bid for Speaker of Parliament."

68.     Plaintiff M. Rahmani's 2018 campaign for the Speakership of the Wolesi Jirga, or lower house of Parliament, was conducted in full compliance with the election laws and regulations of Afghanistan.

69.     Based on publicly available information, the 2018 elections for the Speakership of the Wolesi Jirga was highly controversial and lasted almost two months and ultimately broke down on ethnic lines and Plaintiff M. Rahmani was the consensus candidate of the Tajik, Hazara, and Uzbek (non-Pashtun) members of the Wolesi Jirga.

70.     Similarly, Plaintiff A. Rahmani categorically denies the allegation in the OFAC Press Release that he gave potential voters gifts and money in exchange for their promise to vote for him in the 2018 Wolesi Jirga elections.

71.     Further, Plaintiff A. Rahmani categorically denies the allegation in the OFAC Press Release that he paid members of the Afghan Independent Election Commission to allegedly inflate the number of votes he received in the 2018 Wolesi Jirga election.

72.     Upon information and belief, Kabul Province had 33 Wolesi Jirga seats, and out of hundreds of candidates, A. Rahmani received the highest number of votes across the board.  Based on the final results announced by the Independent Election Commission ("**IEC**"), Mr. Rahmani received a total of 11,158 votes whereas the candidate who received the last of the 33 Kabul seats received only 1,149 votes.  That is, Mr. Rahmani's vote total was ten times more than the number of votes of the last place elected candidate.

73.     The Rahmanis ran their respective campaigns for the Wolesi Jirga, and M. Rahmani's election to the Wolesi Jirga Speakership in full compliance with the election laws and regulations of Afghanistan in effect at the time, and flatly reject any allegation that they engaged in any violations of law related to their elections. From the Rahmanis' perspective, the inaccurate, misleading and, at times, outright false allegations made against them via Defendants' press releases with respect to their respective elections amount to character assassination unsubstantiated by any facts or evidence.

### CAUSES OF ACTION

### COUNT I
### *ULTRA VIRES* AGENCY ACTION—IMPOSITION OF BLOCKING SANCTIONS (AGAINST TREASURY DEFENDANTS ONLY)

74.     Paragraphs 1 through 73 are re-alleged and incorporated by reference as though fully set forth herein.

75.     The Court may set aside agency actions as *ultra vires* when an agency acts beyond its legal authority.

76.     In order to impose blocking sanctions, 22 U.S.C. § 10102(a)(3) of the Global Magnitsky Act requires such a determination to be "based on credible evidence" that a foreign person "*is* a government official, or a senior associate of such an official" and "is responsible for, or complicit in, ordering, controlling, or otherwise directing, acts of significant corruption" (emphasis added).

77.     The Treasury Defendants' imposition of blocking sanctions on Plaintiffs was not in accordance with law because there was no "credible evidence" that either Plaintiff M. Rahmani or A. Rahmani was, at the time of the imposition of sanctions, a foreign person who "is a government official."

78.     The Treasury Defendants' imposition of blocking sanctions on Plaintiffs was not in accordance with law because there was no "credible evidence" that Plaintiff A. Rahmani qualified as, at the time of the alleged acts of corruption, a foreign person who "is a government official."

79.     The Treasury Defendants' imposition of blocking sanctions, therefore, was *ultra vires* and in excess of statutory jurisdiction and authority.

80.     The Court should therefore hold unlawful and set aside the Treasury Defendants' designation of Plaintiffs as SDNs, their inclusion on the SDN List, and the imposition of blocking sanctions upon Plaintiffs.

### COUNT II
### *ULTRA VIRES* AGENCY ACTION—IMPOSITION OF ENTRY SANCTIONS
### (AGAINST STATE DEFENDANTS ONLY)

81.     Paragraphs 1 through 80 are re-alleged and incorporated by reference as though fully set forth herein.

82.     The Court may set aside agency actions as *ultra vires* when an agency acts beyond its legal authority.

83.     Section 7031(c) of FORPA limits the imposition of U.S. entry sanctions to "officials of foreign governments" about whom the Secretary of State has credible information have been involved in corruption.

84.     The State Defendants' imposition of Section 7031(c) sanctions on Plaintiffs M. Rahmani and A. Rahmani (and by extension their immediate family members), who at the time of the imposition were no longer "officials of [a] foreign government[]," was *ultra vires* because Section 7031(c) may only be imposed upon persons who are "officials of foreign governments."

85.     At the time Plaintiffs were sanctioned, no Plaintiff was an official of the Afghan government or any other government.

86.     The Court should therefore hold unlawful and set aside the State Defendants' imposition of Section 7031(c) sanctions upon Plaintiffs M. Rahmani, A. Rahmani, and their immediate family members.

## COUNT III
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—IMPOSITION OF BLOCKING SANCTIONS
## (AGAINST TREASURY DEFENDANTS)

87.     Paragraphs 1 through 86 are re-alleged and incorporated by reference as though fully set forth herein.

88.     Under the Administrative Procedure Act, 5 U.S.C. § 551 et seq. ("**APA**"), the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

89.     In order to impose blocking sanctions, 22 U.S.C. § 10102(a)(3) of the Global Magnitsky Act requires the existence of "credible evidence" that a foreign person "is a government official, or a senior associate of such an official" and "is responsible for, or complicit in, ordering, controlling, or otherwise directing, acts of significant corruption."

90.     The Treasury Defendants' imposition of blocking sanctions on Plaintiffs was in excess of statutory jurisdiction and authority because, at the time of the imposition, Plaintiffs were not government officials.

91.     The Court should therefore hold unlawful and set aside the Treasury Defendants' designation of Plaintiffs as SDNs, their inclusion on the SDN List, and the imposition of blocking sanctions upon Plaintiffs.

**COUNT IV**
**VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—IMPOSITION OF**
**ENTRY SANCTIONS**
**(AGAINST STATE DEFENDANTS ONLY)**

92.     Paragraphs 1 through 91 are re-alleged and incorporated by reference as though fully set forth herein.

93.     Under the APA, "the reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

94.     The State Defendants' imposition of Section 7031(c) sanctions on the Rahmanis (and by extension their immediate family members), who at the time of the imposition were no longer "officials of [a] foreign government[]," was in excess of statutory jurisdiction and authority because Section 7031(c) may only be imposed upon persons who are "officials of foreign governments."

95.     As such, the State Defendants' imposition of Section 7031(c) sanctions on Plaintiffs M. Rahmani and A. Rahmani was in excess of statutory jurisdiction and authority.

96.     The State Defendants' imposition of Section 7031(c) sanctions upon the Rahmanis' immediate family members is only proper if the sanctions upon the Rahmanis themselves are valid. They are not, and therefore neither are the sanctions upon the Rahmanis' immediate family members.

97.     The Court should therefore hold unlawful and set aside the State Defendants' imposition of Section 7031(c) upon Plaintiffs M. Rahmani, A. Rahmani, and their immediate family members.

## COUNT V
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT—
## IMPOSITION OF SANCTIONS
## (AGAINST ALL DEFENDANTS)

98.     Paragraphs 1 through 97 are re-alleged and incorporated by reference as though fully set forth herein.

99.     Under the APA, agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), and agency action found to be without observance of procedure required by law, 5 U.S.C. § 706(2)(D), shall be held unlawful by a reviewing court and set aside.

100.    Defendants' imposition of sanctions on Plaintiffs was based on conclusory allegations, failed to identify any credible evidence, was contrary to fact, and is, therefore, arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

101.    The Court should therefore hold unlawful and set aside Defendants' imposition of sanctions on Plaintiffs.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs request the Court to provide the following relief:

1.      Declare unlawful and set aside Treasury Defendants' designation of Plaintiffs as SDNs and their placement on the SDN List and direct the removal of the designation of Plaintiffs as SDNs and of their placement on the SDN List by a writ of mandamus compelling the same.

2.      Declare unlawful and set aside Defendants' imposition of sanctions on Plaintiffs and direct the lifting of all sanctions and direct the lifting of all sanctions by a writ of mandamus compelling the same.

3.      Permanently enjoin Defendants from imposing sanctions against Plaintiffs of the type and nature and based on the allegations made against Plaintiffs by Defendants in this case.

4.      Enter judgment in Plaintiffs' favor on all counts.

5.      Award Plaintiffs their attorneys' fees and costs pursuant to 28 U.S.C. § 2412 or other appropriate authority.

6.      Any other such relief as the Court deems just and proper.

Dated: January 31, 2024                    Respectfully submitted,

By: /s/ Christopher M. Chaisson
Christopher M. Chaisson (Bar No. 1684813)
Enayat Qasimi (Bar No. 987877)
Whiteford, Taylor & Preston, LLP
1800 M Street, N.W.
Suite 450N
Washington, D.C. 20036
Telephone:      (202) 836-8485
Facsimile:      (202) 327-6174
Email:          cchaisson@whitefordlaw.com
Email:          eqasimi@whitefordlaw.com
*Counsel for Plaintiffs*