IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIR RAHMAN RAHMANI *et al.*,<br><br>   *Plaintiffs*,<br><br> v.<br><br>JANET YELLEN,<br>Secretary of U.S. Department<br>of the Treasury, *et al.*,<br><br>   *Defendants*. | Civil Action No. 1:24-cv-00285 (RC) |

### DEFENDANTS' RESPONSE TO
### PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

  Defendants hereby respond to Plaintiffs' Notice of Supplemental Authority, *see* ECF No. 49 ("Notice"), regarding *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (June 28, 2024), which overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). That case does not help either category of Plaintiffs' claims—the one claim still before the Court, or the already-dismissed claims that Plaintiffs have once again sought to resuscitate—for three reasons.

  1. At the outset, *Loper Bright* emphasizes that courts "interpret statutes . . . based on the traditional tools of statutory construction," *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2268 (2024), a principle that courts have routinely found applies to Executive Orders, *see City & Cnty. of San Francisco v. Trump,* 897 F.3d 1225, 1238 (9th Cir. 2018) ("As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text," which "must be construed consistently with the Order's 'object and policy.'") (cleaned up). The Supreme Court has made clear that the first order of business is to examine the text of the law at issue. *See Bostock v. Clayton County*, 590 U.S. 644, 674 (2020) ("[W]hen the meaning of the statute's terms

1

is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration.").

Here, nearly eight months after filing their Complaint in this litigation, Plaintiffs pay heed to none of these principles. They continue to ignore the plain text of Executive Order 13818 under which they were designated. As this Court has already found, that Executive Order "specifically references" not just the Global Magnitsky Act but also the International Emergency Economic Powers Act ("IEEPA"). Mem. Op. ("Op.") 20-21, ECF No. 33.  And because IEEPA "provides an independent and adequate basis for the sanctions, . . . it is irrelevant whether," as Plaintiffs vigorously contested, "OFAC's designations would be permissible under the Global Magnitsky Act alone." *Id.* at 20. In other words, the plain text of the applicability authority is clear, *not* ambiguous—and ambiguity is the necessary predicate required for the applicability of Chevron (and now *Loper Bright*) in the first place.

Thus, insofar as Plaintiffs now seek to latch on to *Loper Bright* to take yet another bite at the Global Magnitsky apple, the Court should—again—reject this argument. As Plaintiffs themselves recognize, the Court determined that it "need not rule on the scope of the Global Magnitsky Act" and dismissed Plaintiffs' legal authority claims because the International Emergency Economic Powers Act authorizes Plaintiffs' sanctions.  Notice at 2. That ruling did not depend on *Chevron* at all, and Plaintiffs do not claim otherwise.[1] In other words, there is no need for the Court to consider the Global Magnitsky Act, and thus *Loper Bright*, at all.

---

[1] Plaintiffs simply claim that *Loper Bright* is relevant "should the Court grant" their reconsideration motion and have occasion to interpret the Global Magnitsky Act.  Notice at 1.  If the Court elects to grant Plaintiffs Motion for Reconsideration notwithstanding the plain text of Executive Order 13818, Defendants respectfully request that they be given an opportunity to file a supplemental brief in support of their argument that the Global Magnitsky Act authorizes the sanctions imposed against Plaintiffs.

2. In seeking to invoke *Loper Bright*, Plaintiffs also mischaracterize the arguments previously made by Defendants. Plaintiffs conflate the appropriate respect accorded to the political branches on matters of foreign policy and national security with deference to agency interpretations of ambiguous statutory provisions under *Chevron*. Notice 2 at 3-4 (suggesting that deference would not be appropriate post-*Loper Bright* "whether or not OFAC specifically invoked *Chevron* as the basis for that deference").[2] That mixes apples and oranges.

The traditional respect accorded to the Executive Branch's views on foreign relations matters does not flow, as *Chevron* deference did, from assumptions that Congress has left gaps in ambiguous statutes to be filled by agency expertise in the course of APA rulemaking. Rather, such due consideration follows from Article II principles inherent in the Executive's authority over foreign affairs. *See United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 320 (1936) (noting the "very delicate, plenary and exclusive power of the President as the sole organ of the federal government in the field of international relations—a power which does not require as a basis for its exercise an act of Congress"). For that reason, the cases cited by Defendants in their Motion to Dismiss, *see* ECF No. 17, for the proposition that courts generally give great weight to the Executive Branch on foreign policy and sanctions matters, do not rely on (or even cite) *Chevron*. *See, e.g., Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007); *Karadzic v. Gacki*, 602 F. Supp. 3d 103, 115 (D.D.C. 2022); *Olenga v. Gacki*, 507 F. Supp. 3d 260, 280 (D.D.C. 2020). The Court itself cited some of these same cases in its Order granting the

---

[2] Defendants raised *Chevron* deference and the traditional respect due the political branches on foreign relations matters in their prior briefing, but, as Plaintiffs recognize, Defendants relied on *Chevron* only as an alternative argument. Defendants were clear that this argument was an "additional, though not necessary, basis for deferring to OFAC's . . . legal interpretation" of the Global Magnitsky Act. ECF No. 18 at 18-19, 22. And Defendants emphasized first and foremost, in line with *Loper Bright*, that the *plain statutory language* of the Act authorized OFAC to sanction current and former government officials alike. *Id.* at 20-22.

Government's Partial Motion to Dismiss, *see* Op. 23, 33-34, and did not cite (or rely on) *Chevron*. Thus, the traditional consideration accorded to OFAC in international sanctions cases flows from separation-of-powers principles and a caution against judicial interference in foreign relations and national security matters, not *Chevron*. *See, e.g., Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference" and warrant judicial "deference" (quotation marks omitted)). *Loper Bright* did not address this form of due consideration to the executive branch,[3] which remains well-established throughout the law, in and outside of the sanctions context. *See, e.g. Abbott v. Abbott,* 560 U.S. 1, 15 (2010) ("It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight'"); Restatement (Fourth) of Foreign Relations Law § 306 (2018) ("Courts in the United States have final authority to interpret a treaty for purposes of applying it as law in the United States. In doing so, they ordinarily give great weight to an interpretation by the executive branch."); *Sosa v. Alvarez–Machain,* 542 U.S. 692, 733 n. 21 (2004) (suggesting that when the State Department files a statement of interest "there is a strong argument that federal courts should give serious weight to the Executive Branch's view of the case's impact on foreign policy").

3.    Plaintiffs' suggestion that *Loper Bright* undermines the IEEPA national security emergency declared by the President in connection with Executive Order 13818, or otherwise calls in to question the respect that courts would accord the President in determining whether a national

---

[3] *Loper Bright* also explicitly left intact *Skidmore* deference, upon which Defendants also relied as an alternative basis to support their interpretation of the Global Magnitsky Act.  ECF No. 17 at 25 n.7. The Supreme Court made clear that courts may still "seek aid from the interpretations" of agencies, which "'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance' consistent with the APA." *Id.* at 2247 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

4

emergency exists, *see* Notice at 2 fn. 1, is also without merit. For starters, Plaintiffs do not even challenge the lawfulness of Executive Order 13818 or the President's authority to declare a national emergency to combat international corruption in their Complaint, so it is not properly before the Court. And the determination of whether a national emergency exists is not a question of statutory interpretation at all, so it isn't even clear that the *Loper Bright* has anything to say about such determinations. In any event, at its core, *Loper Bright* held that *Chevron* deference was inconsistent with the principle of judicial review contained in Section 706 of the APA. The APA in turn provides for judicial review only with respect to "agency action." 5 U.S.C. §§ 702, 704. The President, however, is not an "agency" within the meaning of the APA, and thus his actions are not reviewable under that statute. *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992) ("As the APA does not expressly allow review of the President's actions, we must presume that his actions are not subject to its requirements."). Courts have also held the President's declaration of an emergency is unreviewable. *See, e.g., Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 33& n.10 (D.D.C. 2020); *Bernstein v. U.S. Dep't of State*, 974 F. Supp. 1288, 1298 (N.D. Cal. 1997). Moreover, not only is the President not subject to suit under the APA (and thus not subject to the logic of *Loper Bright*), but the political accountability arguments leveled against *Chevron* have no relevance to Presidential declarations under IEEPA, because the President is elected. Applying similar logic, the Ninth Circuit held in *Mayes v. Biden*, 67 F.4th 921, 933 (9th Cir. 2023)—in a case subsequently vacated as moot—that the Major Questions Doctrine did not apply to the President as he or she "does not suffer from the same lack of political accountability that agencies may, particularly when *the President* acts on a question of economic and political significance." *Id.* at 933. Plaintiffs' efforts to rely on *Loper Bright*, which involved a rule governing suits under a statute (the APA) that cannot be invoked against the President as a

matter of law, to undermine a Presidential proclamation under IEEPA (that they don't challenge in their Complaint), should be rejected out of hand.

Dated: July 30, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Alexander N. Ely*
ALEXANDER N. ELY
YOSEPH T. DESTA
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Phone: 202-616-8244
Fax: 202-616-8460
Email: Alexander.N.Ely@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I certify that on July 30, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants.

                                                   /s/ *Alexander N. Ely*
                                                   Alexander N. Ely

                                                   *Counsel for Defendants*